JOSHUA COLLETT,
EBENEZER LANE,
REUBEN WOOD,
PETER HITCHCOCK,
} JUDGES.

THE STATE OF OHIO ON RELATION OF A. G. BROWN *v.* ROBERT E. CONSTABLE.

An election for county recorder is illegal and void, if held before the vacancy has actually occurred which it is intended to supply. Such election can only be held at the annual election in October.

RESERVED in the county of Athens.

The case is this: At the November term, 1835, of the Supreme Court for the county of Athens, A. G. Brown, of said county, filed an affidavit, setting forth that at the October election of that year,

State of Ohio v. Constable.

he was duly elected recorder for said county; that he had de-manded the books, papers, documents, and records, pertaining to said office, of one Robert E. Constable, who had previously holden the office, and who refused to give them up. And upon this affi-davit moved the court for a writ of *mandamus*, commanding Con-stable to deliver over to him said books, papers, etc., or to show cause to the contrary.

This motion was sustained, and a writ issued accordingly.

To this writ the defendant returned, that at the October elec-tion, 1832, he was elected recorder of said county of Athens. That he did not take upon himself the duties of the office until July 11, 1833, because that, on July 10, 1826, A. G. Brown had 8] been appointed recorder, *under the then existing laws, for the term of seven years, which term did not expire until July 10, 1833; and the defendant claims the right to hold the office for the term of three years, from and after the time at which he en-tered upon the discharge of his duties thereof.

To this return there is a demurrer and joinder in demurrer.

Nye, for the relator.

R. E. Constable, for defendant.

Judge Hitchcock delivered the opinion of the court:

Two questions are presented to the court for examination in the decision of this case.

1. Was Robert E. Constable, the defendant, legally elected re-corder?

2. If legally elected, at what time would his term of office ex-pire?

In the determination of these questions, we have no other guides than the several legislative enactments on the subject. Previous to the year 1829, county recorders were appointed by the asso-ciate judges of the court of common pleas of the proper county, and the term of office was seven years. But on the 11th of Feb-ruary, of that year, a law was enacted, changing the mode of ap-pointment and providing for the election of these officers by the people. The term of office was also reduced to three years. 27 Ohio Stat. 65. By this act it is clear that the legislature did not in-tend to interfere with those persons then in office. In section 1 it

State of Ohio *v.* Constable.

is enacted, "that there shall be elected by the qualified electors of each county within the state, on the second Tuesday of October *next after the term of service of those now in office shall have expired,* and on the second Tuesday of October triennially thereaf·ter, a recorder for said county," etc. From this it is plain that no election could be holden until after the expiration of the term of service of the then present incumbent—and an election so holden would be void. In order to. prevent any difficulty that might happen, in consequence of a vacancy from the expiration of a seven years' appointment, or otherwise, the same law provides, in section 3, that if the office becomes vacant, "the commissioners of the county shall appoint a recorder, who shall hold his office until the next *October election." It is clear that the legis- [9 lature intended that the office of the county recorder, as soon as it could be done consistently with the rights of those in office, should fall in on the second Tuesday ot October, triennially; and that those elected by the people should hold their offices for the term of three years from that date. But they were cautious to provide that there should be no election, until a vacancy had occurred, from the expiration of the term of those in office who had been appointed under the pre-existing law.

Had the election of Constable taken place during the existence of this act, there can be no doubt but the election would have been void; because when he was elected there was no vacancy. Brown had been appointed in 1826, and his term of office did not expire until long after the election of Constable.

This law, however, was repealed on February 25, 1831, and is only referred to as aiding in the construction of the act of this latter date. In section 1 of the latter act, it is provided, "that there shall be elected in each county in this state, on the second Tuesday of October, triennially, a county recorder, who shall hold his office for the term of three years, if he so long behave well, and until his successor shall be chosen and qualified." That is a convenient provision; but still it was not the intention to interfere with the recorders then in office, as is apparent from the proviso to the repealing clause in section 9, which is as follows: "Provided the that recorder elected under the provisions of said act," referring to the act of 1829, "and those theretofore appointed by the associate judges of the proper county, and whose term of service has not expired, shall continue to hold their respective offices for

3

the term for which they were elected or appointed in the same manner as if the acts under which they were elected or appointed, were not repealed." By this proviso, the laws under which recorders then in office were elected or appointed, was continued in force as far so respected those officers; and it seems clear to my mind, that the law of 1831 was a mere continuation of the law of 1829 so far as relates to the appointment to or duration of the office. Although considerable change is made in the prescribed duties and liabilities of the officer, no change is made as to the election. 10] *It is true this act, in providing for filling vacancies, authorizes the county commissioners to fill such vacancies as occur by " death, resignation, or removal," without authorizing them to fill vacancies in general terms. In this respect it differs from the act of 1829. But it is believed that this was a mere oversight; for at the special session of the general assembly, holden on June 4, 1832, we find an amendatory act providing " that in case the office of recorder in any county is or shall become vacant, the commissioners of the county shall appoint a recorder, who shall hold his office until a recorder shall be elected and qualified." 31 Ohio Stat. 11.

If we are right in the construction of the act of 1831, it follows that the election of Constable was void; being in anticipation of a vacancy which did not occur until the 10th day of July next following the day of election, and not in consequence of a vacancy which had already happened.

The correctness of this construction, so far as relates to an election in anticipation of a vacancy, is strengthened by reference to the " act prescribing the duties of county treasurer," in section 1 of which it is provided that the treasurer, although elected in October, shall hold his office two years from the first Monday of the next succeeding month of June. 29 Ohio Stat. 291. From which it is manifest that where it is the intention that an election should be held in anticipation of a vacancy, that intention is clearly expressed. So in the election of justices of the peace: " when a vacancy is *about to happen*, or shall actually happen," the trustees of the township are required to give notice to the electors of such township to fill such vacancy. 29 Ohio Stat. 167.

It may, perhaps, be thought that the election of Constable being void, his acts performed as recorder are void. But it is not so. He was recorder *de facto*, and the business transacted by him

in the office must be considered equally valid as if he had been properly elected.

The first point being against the defendant, it would seem to be unnecessary to say much as to the second. This, however, would seem to be equally clear against him. Both the statutes of 1829 and 1831 provide, it is true, that the recorder elected shall hold his office for three years, and until his successor is elected and qualified. But from what time? The policy, if not the express words of the law, would indicate that it must be from the day of election. The election is to *be holden on the second Tues- [11 day of October, triennially. If a vacancy happens, it is to be filled until the second Tuesday of the next succeeding October, and on this day the term of service must expire if a successor be elected, or rather so soon thereafter as the successor is qualified. When no day is mentioned in the law from which the term of service shall commence, it must commence from the day of election. Any other construction would lead to this absurdity, that the officer elect would have it in his power to fix the commencement of the term of service for himself and his successor at any time he should think proper to qualify.

It is not so in regard to other offices; why should it be so in regard to this?

It follows that had the election of Constable been legal, his term of service expired upon the qualification of his successor, and he had no right after that time to discharge the duties of the office, or to withhold the books, papers, etc., connected with it.

The demurrer is sustained, and a peremptory mandamus ordered.