**Franklin SPEARS, Relator,**

**v.**

**Will D. DAVIS, Chairman of the State Democratic Executive Committee, Respondent.**

**Galloway CALHOUN, Jr., Relator,**

**v.**

**Will D. DAVIS, Chairman of the State Democratic Executive Committee, Respondent.**

Nos. A–11215, A–11224.

Supreme Court of Texas.

Jan. 31, 1966.

Cofer, Cofer & Hearne, Austin, William L. Garwood, Austin, for relator Spears.

Dan Moody, Jr., John E. Clark, Austin, for relator Calhoun.

Tom Sealy, Midland, Joe M. Kilgore, Austin, for respondent.

NORVELL, Justice.

Relators, Franklin Spears and Galloway Calhoun, Jr., presently State Senators, have filed separate petitions for original writs of mandamus ordering Will D. Davis, Chairman of the State Democratic Executive Committee, to place their names upon the primary ballot as candidates for the Democratic nomination for the office of Attorney General of Texas. Article 1735a, Vernon's Ann.Tex.Stats., Appellate Procedure in Texas, § 1.4[1]. While the causes were argued and submitted separately, they may be disposed of by one opinion. We will hereinafter note some factual distinctions relating to the positions of the two relators.

The Texas Election Code provides that:

"No person ineligible to hold office shall ever have his name placed upon the ballot at any general or special election, or at any primary election where candidates are selected under the primary laws of this State; and no such ineligible candidate shall ever be voted upon, nor have votes counted for him at any such general, special, or primary election." Article 1.05, Vernon's Texas Election Code; Purcell v. Lindsey, 158 Tex. 541, 314 S.W.2d 283 (1958).

Upon the presentation of applications for a place upon the primary ballot, Article 13.12, Vernon's Texas Election Code, it becomes the duty of the State Chairman of the party executive committee, regardless of the wishes of candidates or prospective candidates, to ascertain and make sure that those filing such applications are, if nominated, eligible to go on the general election ballot. A failure so to do could result in a party's primary nominee being declared ineligible after the primary and before the general election; or, if the question were raised after the general election, a successful party nominee might be precluded from qualifying and assuming the duties of office because of such ineligibility. Article 1.06, Vernon's Texas Election Code.

The eligibility of both Senator Spears and Senator Calhoun to hold the office of Attorney General for the two year term beginning January 1, 1967 having been questioned, the respondent Davis refused to accept their applications for a place upon the Democratic primary ballot for the election to be held on May 7, 1966. The filing of these actions followed. The causes being cast in an adversary mold, able counsel appeared for both sides and vigorous, well-prepared and helpful arguments were presented relating to the question of eligibility.

It is conceded that both relators are legally qualified to hold the office of Attorney General of Texas and have taken all required actions entitling them to a place upon the primary ballot unless they are rendered ineligible by Article 3, § 18 of the Texas Constitution, Vernon's Ann.St., which provides that:

"No Senator or Representative shall, during the term for which he may be elected, be eligible to any civil office of profit under this State, which shall have been created, or the emoluments of which may have been increased during such term, * * *." [1]

At the general election to be held on November 8, 1966, the qualified voters of Texas will choose an Attorney General for a term of office beginning on January 1, 1967. Article 4, §§ 2 and 22, Texas Constitution, Article 17, Vernon's Ann.Tex. Stats. Ex parte Sanders, 147 Tex. 248, 215 S.W.2d 325 (1948). Kothmann v. Daniels, 397 S.W.2d 940 (Tex.Civ.App., Original Proceeding in Mandamus, 1965). [2]

---

[1]. The Texas constitutional provision is similar to that contained in the Constitution of the United States which was no doubt consulted as a model by the framers of the Constitution of the Republic of Texas. Article 1, § 6, par. 2 of the Constitution of the United States relates only to appointments to civil offices and provides that:

"No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office."

It appears that in one of the preliminary drafts of the Constitution of the United States, this provision was even more stringent and rendered members of each House "ineligible to, and incapable of holding any office under the authority of the United States, during the time for which they shall respectively be elected; and the members of the Senate shall be ineligible to, and incapable of holding any such office for one year afterwards." Report of the Committee on Detail of August 6, 1787. Van Doren, The Great Rehearsal, p. 278. The constitutional safeguard of Article 1, § 6 of the Constitution of the United States is discussed in Essay No. 56 of the Federalist.

It also appears that a similar provision was contained in the 1827 Constitution of the Mexican state of Coahuila and Texas. It there provided in Article 45 of the First section that:

"During the time of their service (members of Congress), reckoned for this object from the day of their election, they can obtain no office of provision of the executive, either for themselves, or request it for another, not even promotion, except by the scale in their respective career." 1 Gammel's Laws of Texas, 428.

Article 1, § 23 of the Constitution of the Republic of Texas provided that:

"No person holding an office of profit under the government shall be eligible to a seat in either house of congress, nor shall any member of either house be eligible to any office which may (be) created or the profits of which shall be increased during his term of service." 1 Gammel's Laws of Texas, 1071.

Article 3, § 24 of the Texas Constitution of 1845 provided that:

"No Senator or Representative shall, during the term for which he may be elected, be eligible to any civil office of profit under this State, which shall have been created, or the emoluments of which may have been increased, during such term; * * *." 2 Gammel's Laws of Texas, 1282.

[2]. Senator Calhoun presents an alternative contention that should Article 17, Vernon's

Relator Spears was elected Senator on November 6, 1962 and received a certificate of election on November 23, 1962. Relator Calhoun was elected Senator on November 3, 1964 and received his certificate of election on November 20, 1964. Because of a reapportionment of the Legislature, an entirely new Senate will be chosen at the general election to be held on November 8, 1966. Both relators were members of the 59th Legislature which raised the salary of the Attorney General from $20,000 to $22,500 per annum, effective with the biennium beginning September 1, 1965.

It is contended that Senator Spears' term of office commenced with the convening of the 58th Legislature on January 8, 1963 and hence the term of State Senator overlaps that of the Attorney General for a period of approximately eight days. A similar contention is made with reference to Senator Calhoun. In other words, it is respondent's position that a State Senator's term commences from the date of the convening of the first Regular Session of a Legislature following his election.

In respondent's original brief, the controlling question with reference to Senator Spears is stated as follows:

"The question of whether his Senate term conflicts with the term of the Attorney General turns on whether the four-year Senate term commenced the previous November 23, when petitioner's election was completed and certified, or on January 8, 1963, when the Senate convened and petitioner was sworn and assumed the office and its emoluments."

However, by means of a post-submission brief, respondent asserts, in the alternative, that if the day the election process is completed, that is, the canvassing of the election returns, be taken as the beginning date of the term of office of a State Senator, both

relators would be ineligible by reason of a 1965 amendment to the Election Code which provides that a canvass of the returns of an election for a member of the House of Representatives or State Senate would take place on the Monday before the second Tuesday in January following the election. Acts, 1965, 59th Leg., p. 199, ch. 83, Article 8.41, Vernon's Election Code. It is also urged that an election is not complete until the returns thereof have been canvassed; Ex parte Sanders, 147 Tex. 248, 215 S.W.2d 325 (1948); Leslie v. Griffin, 25 S.W.2d 820 (Tex.Comm.App.1930); and that in Kirk v. Gordon, 376 S.W.2d 560 (Tex.Sup. 1964), it was indicated that a term of office would begin after the canvass of returns had been completed.

We will first dispose of this alternative contention. A reading of the Kirk case discloses that the exact day upon which a term of office commenced was not in issue as the decision of the case did not turn on whether the commencement of the term of office involved was the day of election or the day upon which the election process was completed.

However that may be, we do not attribute to the Legislature an intention to lengthen the terms of either Senator Spears or Senator Calhoun some 45 to 60 days, or more, and thus create an overlap and render them ineligible for the office of Attorney General. The amendment to Article 8.41 of the Code was clearly intended to operate prospectively and any holding over by Senators Spears and Calhoun for a period of time in excess of the constitutional term of office would be by virtue of the provisions of Article 16, § 17 of the Texas Constitution and Article 17, Vernon's Ann.Tex.Stats.

It is relators' primary contention that the term of office of a State Senator begins on the day of the general election. In order to evaluate the contentions of the parties, it is necessary to examine in some detail the

Ann.Tex.Stats. be held unconstitutional, then the term of office for Attorney General would be from date of election and

under this construction, the terms of office of the Attorney General and a State Senator would not overlap.

pertinent constitutional provisions relating to the terms of office of both Senators and members of the House. Sections 3 and 4 of Article 3 of the present Constitution (1876) read as follows:

"Sec. 3. The Senators shall be chosen by the qualified electors for the term of four years; but a new Senate shall be chosen after every apportionment, and the Senators elected after each apportionment shall be divided by lot into two classes. The seats of the Senators of the first class shall be vacated at the expiration of the first two years, and those of the second class at the expiration of four years, so that one-half of the Senators shall be chosen biennially thereafter."

"Sec. 4. The members of the House of Representatives shall be chosen by the qualified electors, and their term of office shall be two years from the day of their election."

Professor S. S. McKay's Reports of the "Debates of the Constitutional Convention of 1875", as well as a comparison of the wording of the various Texas Constitutions, discloses a substantial continuity of provisions which extends from the Constitution of the Republic through the 1845 Constitution (first state constitution), the Constitution of 1861 (Confederate), the Constitution of 1866 (Presidential Reconstruction), the Constitution of 1869 (Congressional Reconstruction), to the Constitution of 1876. It seems that the framers of the latter Constitution took the Constitution of 1845 (the first State Constitution) as their primary model and working basis.

The constitutional term of office for the members of the House of Representatives of the Texas Congress was stated as follows in the Constitution of the Republic:

"The members of the house of representatives shall be chosen annually, on the first Monday of September each year, until congress shall otherwise provide by law, and shall hold their offices one year from the date of their election." Art. 1, § 3, Constitution of the Republic of Texas, 1 Gammel's Laws of Texas, 1069.

The provision of the Republic Constitution relating to Senators provided that:

"The senators shall be chosen for the term of three years on the first Monday in September; * * * At the first session of congress after the adoption of this constitution, the senators shall be divided by lots into three classes, as nearly equal as practical; the seats of the senators of the first class shall be vacated at the end of the first year; of the second class, at the end of the second year; of the third class, at the end of the·third year, in such a manner that one-third shall be chosen each year thereafter." Art. 1, §§ 8 and 9, Constitution of the Republic of Texas, 1 Gammel's Laws of Texas, 1070.

The Constitution of 1845 provided that:

"The members of the house of representatives shall be chosen by the qualified electors, and their term of office shall be two years from the day of the general election; * * *". Art. 3, § 5, Constitution of 1845, 2 Gammel's Laws of Texas, 1280.

As to Senators, the 1845 Constitution provided that:

"The senators shall be chosen by the qualified electors for the term of four years; and shall be divided by lot into two classes as nearly equal as can be. The seats of the senators of the first class shall be vacated at the expiration of the first two years, and of the second class at the expiration of four years; so that one-half thereof shall be chosen biennially thereafter." Art. 3, § 8, Constitution of 1845, 2 Gammel's Laws of Texas, 1280.

The provisions of the Constitutions of 1861, 1866 and 1869 [3] were practically identical with the provisions of the Constitution of 1845, except that the Constitution of 1869 provided for senatorial terms of six years. Art. 3, §§ 5, and 8, Constitution of 1861, 5 Gammel's Laws of Texas, 6; Art. 3, §§ 4 and 7, Constitution of 1866, 5 Gammel's Laws of Texas, 860; Art. 3, §§ 4 and 8, Constitution of 1869, 7 Gammel's Laws of Texas, 399.

██ In order to avoid confusion, a clear distinction must be made between the phrase, "term of office" and an individual's tenure of office. The period of time designated as a term of office may not and often does not coincide with an individual's tenure of office. As to members of the House of Representatives, the Constitution plainly says that "their term of office shall be two years from the day of their election". This provision has the same meaning as the 1845 provision that "their term of office shall be two years from the day of the general election". The first Tuesday after the first Monday in November of even numbered years is set as the day of the general election by Article 2.01, Vernon's Texas Election Code.

██ The construction of the constitutional provision as to the term of office of the members of the House is important in this way. The relators contend that the general rule as to commencement of terms is that, "The term of office begins from the time, if any, fixed by law, or where no time is fixed, on the day of election or the date of appointment." 67 C.J.S. Officers § 45, p. 199. While there is authority to the contrary,[4] we are in agreement with this contention and if we were to consider

the constitutional provision relating to Senators by itself, we would have no difficulty in saying that the usual senatorial term extended four years from the day of the general election. Further, this seems to be the construction inferentially accepted by the Supreme Court of the Republic in Bradley v. McCrabb, Dallam's Decisions, p. 504 (1843).

Both the distinction between a "term of office" and an individual's tenure in office and the beginning date of a term of office in case of constitutional and statutory silence were discussed in the well considered case of People ex rel. Holdom v. Sweitzer, 280 Ill. 436, 117 N.E. 625 (1917). The Supreme Court of Illinois said:

"[T]he exact question raised by the second contention is, when do the terms of office of circuit judges in the state begin and end? A definite time is not fixed by the Constitution of 1870 for the commencement of the terms of office of judges of the circuit court of Cook county or of those who are elected in other circuits of the state, as in the case of other state officers and county officers. The date of election of circuit judges is fixed by the Constitution, and by the laws enacted pursuant thereto, as the first Monday in June of certain years. The duration of the term is fixed by the Constitution as six years. The term of office as fixed by law is sometimes used interchangeably with the term or time of occupancy of the incumbent of such office, but it must be distinctly borne in mind that the term of office as fixed by law is entirely different from the period of time such office is held by the incumbent thereof, sometimes re-

3. The Constitution of 1869 was somewhat anomalous in that Article 3, § 4 refers to "the day of the general election", while Article 3, § 6 provided for four day county seat voting. See, Ex Parte Rodriguez, 39 Tex. 706 (1873).

4. Respondent cites Alaska S.S. Co. v. Mullaney, 84 F.Supp. 561, 12 Alaska 433

(1949), affirmed on other grounds, 180 F.2d 805, 12 Alaska 594 (1950) and Farrelly v. Cole, 60 Kan. 356, 56 P. 492, 44 L.R.A. 464 (1899). For a collation of cases dealing with the problem, see Annotations, 80 A.L.R. 1290 and 135 A.L.R. 1173.

ferred to as the term. The general rule seems to be that the term of office, when not fixed as to the date of its beginning and ending by a Constitution or statute, begins in the case of elective offices on the date of election. 28 Cyc. 1398; State [ex rel. Brown] v. Constable, 7 Ohio 7, pt. 1; Marshall v. Harwood, 5 Md. 423; Hughes v. Buckingham, 5 S[medes] & M. 632. * * *"

See also, State ex rel. Moran v. Washburn, 19 Conn.Sup. 316, 112 A.2d 897 (1955). Cf. Davis ex rel. Taylor v. Crawford, 95 Fla. 438, 116 So. 41 (1928); State ex rel. Sanchez v. Dixon, 4 So.2d 591 (Louisiana App.1941); State ex rel. Ross v. Carroll, 133 Wash. 549, 234 P. 22 (1925).

However, the respondent urges that as the framers of the Constitution specifically provided that the terms of House members "shall be two years from the day of their election" [5] and omitted any such provision relating to senatorial terms, they must have intended that the terms of Senators should begin at some time other than the day of election. Respondent likewise urges that there is a long standing Legislative usage or custom that a Senator's term begins upon the first day of the first Regular Session of the Legislature which is convened after his election.

In reply, relators point out that the Constitution provides that, "The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas'", Article 3, § 1, Constitution of Texas, and that there is no provision, constitutional or otherwise, which recognizes the State Senate as a governmental unit in any other way than as an integral part of the Legislature of the State of Texas. The Senate may not by itself remain in session after the Legislature has adjourned, even to consider non-legislative duties imposed upon it by constitutional provision, such as confirming or rejecting gubernatorial appointments. Walker v. Baker, 145 Tex. 121, 196 S.W.2d 324 (1946). It is pointed out that Article 5423, Vernon's Ann.Tex.Stats., provides that:

"Those persons receiving certificates of election to the Senate and House of Representatives of the Legislature, and those Senators whose terms of office shall not have terminated, and none others, shall be competent to organize the Senate and House of Representatives."

As relating to legislative construction or interpretation, it is urged that it is clearly implied in this Article that a Senator's term of office begins before the Legislature convenes. It is said that by using the expression, "Senators whose terms of office shall not have terminated", it must be inferred that all others, i. e. those whose terms have terminated, are not competent to organize the two branches of the Legislature.

It is further urged that a holding that the terms of Senators and House members did not begin upon the same date would be to countenance a somewhat absurd situation, particularly when applied to the disqualification provisions of Article 3, § 18 of the Constitution in that a member of the House could become a legal candidate for the office of Attorney General, while a Senator by reason of a few days' overlap in terms could not.

We are constrained to agree with relators' position. We have searched through such records of the various Texas Constitutional Conventions as are available to us and have been unable to find any reason that was advanced for the difference in the wording of the provision relating to senatorial terms and that relating to terms of the members of the House. From the Constitution of the Republic to that of 1876, the constitutional clause referring to senatorial terms provided for staggered terms and it may be that the phrase fix-

---

5. Respondent apparently construes "day of election" to be synonymous with date of certification.

ing a senatorial term at so many "years after day of election" was omitted in the interest of simpler sentence structure and with no intent to provide a different day for the commencement of a senatorial term from that provided for the commencement of a House term.

As heretofore pointed out, there is a clear distinction between a "term of office" and an individual's incumbency in office. People ex rel. Holdom v. Sweitzer, 280 Ill. 436, 117 N.E. 625 (1917), supra. It further seems that the practice of Legislators taking the necessary qualifying oath at the time of the commencement of the Regular Session of the Legislature was followed by members of the House as well as members of the Senate until 1962 when the Legislative salary was first placed upon an annual rather than a per diem basis. At that time, the Attorney General ruled that members of the House elected at the general election held on November 6, 1962 were entitled to begin drawing their salaries as soon as the canvassing of the returns of the election had been completed and they had taken the oath of office prescribed by the Constitution. Prior to such time, it does not appear that the exact day of the commencement of either a Senator's or House Member's term of office was ever raised. It appears that no attempt has ever been made to convene a Special Session of the Legislature between the date of the general election and the date set for the commencement of a Regular Session of the Legislature. These circumstances deprive respondent's "custom" argument of much force.

We hold that Senator Spears is entitled to the relief prayed for in his petition filed herein.

As to Senator Calhoun, it is suggested that even though Senator Spears is an eligible candidate for the office of Attorney General, it does not necessarily follow that Senator Calhoun is also eligible.

It is pointed out that while Senator Spears was elected in November of 1962, Senator Calhoun was elected in November, 1964. A four year term of office would extend almost two years beyond January 1, 1967, the beginning date of the term of office of the Attorney General to be chosen at the 1966 general election.

■ As we construe Article 3, § 3 of the Texas Constitution, it does not provide that all Senators at all elections shall receive full four years terms. Four years is undoubtedly the usual term of office for a State Senator, but the provision relating to "the term of four years" must be construed in context with that part of Section 3 relating to apportionment. This section provides that, "The Senators shall be chosen by the qualified electors for the term of four years; but a new Senate shall be chosen after each apportionment; * * *". The provision for the election of a new Senate necessarily qualifies the provision relating to a four year term.

Normal rules of construction require that Article 3, § 3 be read as a whole. Its language must be considered in full context and where possible the plain grammatical meaning given to its words. No word or group of words should be over emphasized to the point of disregarding other words or phrases in the section. The application of principles of grammatical construction requires that the word "but" as used in the section be considered as a qualification of something stated in the preceding phrase. The word is not used as a conjunction but refers to the term of a Senator and thus qualifies the usual four year term.

The term of office to which Senator Calhoun was elected in 1964, being subject to the constitutional provisions relating to apportionment, became actually one of two years because of the operation of the apportionment clause. He is a resident of Smith County which at the time of his elec-

tion in 1964 was a part of the Seventh Senatorial District composed of the Counties of Camp, Henderson, Kaufman, Smith, Upshur, Van Zandt and Wood. Acts 1961, 57th Leg., p. 544, ch. 256. The 59th Legislature, however, adopted an Apportionment Act which placed Smith County in the Second Senatorial District along with the Counties of Gregg, Panola, Rusk, Shelby, Upshur and Van Zandt. Acts 1965, 59th Leg., p. 719, ch. 342, Article 193a, Vernon's Ann.Tex.Stats.

As Senator Calhoun's term was subject to apportionment and as the "new Senate" to be elected in accordance with the apportionment provisions of the Constitution on November 8, 1966 will effectively terminate the term of office for which Senator Calhoun was elected, we hold that he is an eligible candidate for Attorney General for the term beginning January 1, 1967.

We think our interpretation of the constitutional provisions is in accordance with and not contrary to the purpose sought to be served by Article 3, § 18 of the Texas Constitution. In Shields v. Toronto, 16 Utah 2d 61, 395 P.2d 829 (1964), the Supreme Court of Utah said:

"The obvious purpose of Section 7, Article (VI) [which is practically identical with Article 3, § 18 of the Texas Constitution] * * * was to guard against dishonesty or improper connivance by or with legislators and to prevent them from being influenced by ulterior schemes to enrich themselves at the expense of the public treasury by creating or increasing the pay of a public office and then taking advantage of it. This purpose is altogether salutary. Let it be said with the greatest of emphasis that the provision referred to should neither be ignored nor evaded, but whenever there is even a remote possibility that the evil it was designed to prevent might exist, it should be applied in such

manner as to accomplish its objective. However, when adequate safeguards in that respect are observed, there appears to be no good reason to carry this provision beyond that purpose and make an unreasoning application of it where no such evil, nor any possibility of it exists. This would work injustice by depriving citizens of their basic rights and would also tend to disrupt the orderly processes of democratic government."

It is in no way detrimental to the public interest for a member of the Legislature to desire election to the office of Attorney General. In the past, many of the occupants of that office were persons of prior legislative service. Under the Constitution of the United States, the disqualification of members of Congress to hold federal offices was limited to those positions which were to be filled by executive appointment. The threat of improper motives entering into the creation or improvement of a public office to be filled by election must have been considered remote. It would appear that the principal purpose of Article 3, § 18 of the Texas Constitution is to remove, if possible, any improper personal motive of gain that might influence a Legislator to create or increase the emoluments of a public office with the intention of resigning his legislative post in order to take the office which he, as a Legislator, had helped to create or make more attractive from a financial standpoint. The purpose sought to be served by the provisions of Article 3, § 18 of the Constitution will in no way be frustrated or defeated by holding the relators eligible to hold the office of Attorney General for the term beginning January 1, 1967.

Having considered the wording of said Article 3, § 18 and weighed the purpose of its adoption, we hold that both Senator Spears and Senator Calhoun are entitled to the relief prayed for by them in their respective petitions. Writs will not issue, however, as we anticipate that the respond-

ent will comply with our holdings herein and accept the applications filed by relators and place their names upon the Democratic primary ballot. Should respondent fail to so perform, peremptory writs of mandamus will issue upon application of relators as a matter of course. Because the expiration of the time prescribed for the filing of applications for a place upon the primary ballot under the provisions of Article 13.12, § 2 of Vernon's Election Code is near at hand, no motion for rehearing will be entertained.

CALVERT, C. J., dissents in cause No. A–11224.

GRIFFIN, J., dissents in both causes Nos. A–11215 and A–11224.

GRIFFIN, Justice (dissenting).

I regret that I am unable to agree with the majority opinion in either case.

The holding is contrary to all past constructions of the terms of Senators. When the people took out of the Constitution a specific time for the beginning of a Senator's term and left in the beginning of the term of House members, this shows the people did not intend the members of the House and Senate to begin their terms on the same date.

Since originally deleting the beginning date for a Senator's term, the people have three times refused to definitely state a beginning date for a Senator's term. This further fortifies my position. Also, the majority opinion is contrary to all previous constructions of the Constitution by the Legislature, the Attorney General and the Comptroller in issuing pay for members of the Legislature; also those in charge of the determination of eligibility for retirement of Senators.

I would deny the application for mandamus by both relators.

CALVERT, Chief Justice (dissenting).

I agree that a writ of mandamus should issue in Cause No. A–11215, but I cannot agree that a writ should issue in Cause No. A–11224.

The right of the relator in Cause No. A–11215 to a writ turns entirely on a proper interpretation of constitutional provisions establishing the beginning and ending dates of his four-year term of office as a Senator. I agree, for the reasons stated in the Court's opinion, that his four-year term of office began on the day of the general election in November, 1962, and will end on the day of the general election to be held in November, 1966, and thus that he is not ineligible to hold the office of Attorney General for a term beginning January 1, 1967, if he should be elected thereto in the general election in November.

The facts in Cause No. A–11224 present an additional and entirely different constitutional problem. The relator in this cause was elected in the general election held in November, 1964; and if his election at that time was for a four-year term from the day of his election, he is rendered ineligible to hold the office of Attorney General for a term beginning January 1, 1967, by the provisions of Sec. 18, Art. III of the Constitution. Sec. 18 provides:

> "No Senator or Representative shall, *during the term for which he may be elected,* be eligible to any civil office of profit under this State, which shall have been created, or the emoluments of which may have been increased during such term; * * *"

But it is said that Sec. 18 does not render the relator ineligible because at the beginning of his four-year term the Legislature re-apportioned and cut down his term of office to two years. This requires an examination of the provisions of Sec. 3, Art. III. It reads:

> "*The Senators shall be chosen* by the qualified electors *for the term of four*

*years;* but a new Senate shall be chosen after every apportionment, and the Senators elected after each apportionment shall be divided by lot into two classes. The seats of the Senators of the first class shall be vacated at the expiration of the first two years, and those of the second class at the expiration of four years, so that one half of the Senators shall be chosen biennially thereafter."

It will be noted that the opening clause of the section explicitly and emphatically states that "The Senators shall be chosen * * * *for the term of four years;* * * *" The authors of the Constitution could hardly have used plainer language. It is undoubtedly true that Sec. 3 provides two circumstances under which a four-year term *to which a Senator was elected* may effectively be ended before it has run its full course. The four-year term of a Senator *who is in office* when reapportionment is voted is cut to two years by the requirement for the election of a *new* Senate. The four-year term of one-half of all Senators elected *after* re-apportionment is cut to two years by the provision *vacating their seats* if they are unlucky in the division of the Senate into two classes by lot. In light of these provisions the Court interprets Sec. 18 as though it read: "No Senator or Representative shall, during the term for which he may be elected, be eligible" etc., "except that he shall be eligible if by some other provision in the Constitution the four-year term to which he is elected is reduced to a two-year term."

As a matter of hindsight, perhaps the authors of the Constitution would now modify the language of Sec. 3 by adding the same exception which the Court has added. If I were entrusted with the power to rewrite or amend the Constitution, I would add the exception; but there is only one way to change the Constitution and that is by an amendment submitted by the Legislature and approved by the electorate. I cannot get my consent to usurp the power.

I would deny relief in Cause No. A–11224.