Louis TERRAZAS, W.E. Tucker, Linda Allison Frederick, Verne D.J. Phillips and Ed Emmett, Plaintiffs,

Jesus Rodriguez, et al., Plaintiffs-Intervenors,

R.A. Deison, Jr., et al., Plaintiffs-Intervenors,

v.

William P. CLEMENTS, Individually and in his official capacity as Governor of the State of Texas; et al., Defendants.

Civ. No. 3–81–1946–R.

United States District Court, N.D. Texas, Dallas Division.

Dec. 22, 1983.

Thomas G. Crouch, Crouch & Jones, Patricia A. Hill, Dallas, Tex., for senate plaintiffs (CA 3–81–1946–R).

John N. McCamish, Jr., Pat Deely, McCamish, Ingram, Martin & Brown, Inc., San Antonio, Tex., for house plaintiffs (CA 3–81–2205–R).

Randall B. Strong, Daniel R. Jackson, Baytown, Tex., for Baytown plaintiffs (CA 3–81–2263–R).

Joaquin G. Avila, Jose Garza, Norma V. Solis, Judith A. Sanders, Mexican American Legal Defense and Educational Fund, San Antonio, Tex., Albert H. Kauffman, Dallas, Tex., Vilma S. Martinez, Morris J. Baller, Mexican American Legal Defense and Edu-cational Fund, San Francisco, Cal., for MALDEF intervenors.

J. Richie Field, Crews, Field, Steele & Page, Conroe, Tex., for Montgomery County intervenors.

David R. Richards, Executive Asst. Atty. Gen., State of Tex., Steve Bickerstaff, C. Robert Heath, Martha E. Smiley, Bickerstaff, Heath & Smiley, Richard E. Gray, III, Gray, Allison & Becker, Austin, Tex., for defendants Mark White, William P. Clements, William P. Hobby, Bill Clayton, Bob Bullock and Bob Armstrong.

John Harmon, R. James George, Graves, Dougherty, Hearon & Moody, Austin, Tex., for defendant Chester R. Upham.

Bob Slagle, III, pro se.

Cullen Smith, Larry O. Brady, Naman, Howell, Smith & Lee, David Guinn, Michael Morrison, Baylor Law School, Waco, Tex., for defendant David Dean.

William French Smith, U.S. Atty. Gen., Paul Hancock, Robert S. Berman, David S. Cunningham, III, U.S. Dept. of Justice, Washington, D.C., amicus curiae Dept. of Justice.

Before RANDALL, Circuit Judge, and SANDERS and BUCHMEYER, District Judges.

## MEMORANDUM OPINION

The purpose of this memorandum opinion and the order being entered simultaneously with the issuance of this opinion is to adopt a permanent reapportionment plan for electing members of the Senate of the State of Texas.

### I. FACTUAL AND PROCEDURAL HISTORY.

This litigation began on October 29, 1981, when the Senate Plaintiffs [1] brought suit in this Court claiming that the reapportionment plan (the "LRB Senate plan") for electing members of the Senate of the State of Texas adopted on October 27, 1981, by the Legislative Redistricting

---

1. Terms defined in our opinion in *Terrazas v. Clements,* 537 F.Supp. 514 (N.D.Tex.), *stay denied,* 456 U.S. 902, 102 S.Ct. 1745, 72 L.Ed.2d 158 (1982), will be used herein as therein defined.

Board (the "LRB") of the State of Texas pursuant to Article III, § 28 of the Texas Constitution violated the fourteenth and fifteenth amendments to the United States Constitution. The case was consolidated with two other subsequently filed cases challenging the LRB House plan. The defendants in the consolidated cases are the Governor of the State of Texas, the Lieutenant Governor, the Secretary of State, the Attorney General, the Speaker of the House of Representatives, the Comptroller of Public Accounts and the Commissioner of the General Land Office (collectively, the "State Defendants"); George W. Strake, Jr., the Chairman of the State Republican Party; and Bob Slagle, the Chairman of the State Democratic Party. Two groups were permitted to intervene. One such group, consisting of individuals claiming residence in Montgomery County, Texas, challenged both the LRB Senate and House plans. However, since the filing of their initial complaint, the Montgomery County intervenors have not filed any further pleadings, have failed to appear at any of the evidentiary hearings that have been held and have failed to respond to this Court's orders requiring the filing of briefs, status reports and objections. They have, accordingly, long since ceased to participate as parties in this litigation. The other group of intervenors (the "MALDEF Intervenors" or "MALDEF") challenged both the LRB Senate and House plans as violating the fourteenth and fifteenth amendments to the United States Constitution and Section 2 of the Voting Rights Act.

Developments during the period from October 29, 1981, through March 24, 1982, both within the litigation and affecting the litigation, are chronicled at length in our earlier opinion in this case, *Terrazas v. Clements*, 537 F.Supp. 514 (N.D.Tex.), *stay denied*, 456 U.S. 902, 102 S.Ct. 1745, 72 L.Ed.2d 158 (1982), and will not be repeated here. In response to those developments, this Court adopted the LRB Senate plan as a temporary plan in order to permit the 1982 Senate elections to be held and also to permit the redistricting process, com-

menced by the Texas legislature in 1980 and "temporarily interrupted," *id.* at 548, on January 8, 1982, by the issuance by the Department of Justice of a letter of objection to the LRB Senate plan under Section 5 of the Voting Rights Act, to be completed. The elections were held and the newly elected legislature convened on January 11, 1983.

On May 24, 1983, the State Defendants filed a motion (the "State's Motion") for approval and adoption by this Court of a proposed consent decree pursuant to which this Court would adopt, as its permanent court ordered plan for the apportionment of the State of Texas into 31 senatorial districts, the LRB Senate plan, as modified by Appendix A to such proposed consent decree (the LRB Senate plan, as so modified, being herein called the "1983 Senate plan"). According to the State's Motion, the State Defendants and the MALDEF Intervenors entered into negotiations to resolve the challenges to the LRB Senate plan asserted by the MALDEF Intervenors in this litigation and to address and solve the objections noted by the Department of Justice in its letter relating to the LRB Senate plan. Those negotiations culminated in the 1983 Senate plan, and the State's Motion reflects the agreement of the State Defendants and the MALDEF Intervenors that the 1983 Senate plan resolves any and all claims by the MALDEF Intervenors regarding the validity of the LRB Senate plan, including all claims arising under the United States Constitution, the Texas Constitution or any state or federal statute, including Section 2 of the Voting Rights Act. Also according to the State's Motion, the Senate of the State of Texas adopted on May 16, 1983, a resolution stating that it had reviewed the 1983 Senate plan and had found such plan to embody legitimate state policies such as the consideration of city boundaries, historical district configurations, natural barriers, compactness, communities of interest and member-constituent relations. The State's Motion contemplated that this Court would enter the proposed consent decree adopting the 1983

Senate plan, but that the 1983 Senate plan would not take effect unless and until cleared by the Department of Justice pursuant to Section 5 of the Voting Rights Act. This Court declined to act, even on a preliminary basis, upon the 1983 Senate plan before it was submitted to the Department of Justice for preclearance under Section 5.

The Department of Justice precleared the 1983 Senate plan under Section 5 of the Voting Rights Act on September 6, 1983. On September 21, 1983, this Court entered an order declaring any remaining issues in this case ripe for adjudication, see McDaniel v. Sanchez, 452 U.S. 130, 150–53, 101 S.Ct. 2224, 2236–38, 68 L.Ed.2d 724 (1981) (district court may not pass on constitutionality of state redistricting plan subject to preclearance requirements of Section 5 until plan has been precleared), and establishing a schedule in order to facilitate our review of and decision on the remaining issues. This Court noted that it intended to rule on the validity of the 1983 Senate plan, and only if there was an infirmity in that plan would it consider any other plans. Among other things, each party was directed to file a statement of those issues of fact and law still in controversy in this case, a request for any evidentiary hearing considered necessary and proposed findings of fact and conclusions of law. In order to resolve objections to the 1983 Senate plan by the Senate Plaintiffs and various objections to a reapportionment plan (the "1983 House plan") for the Texas House of Representatives which had also been precleared by the Department of Justice, we scheduled an additional evidentiary hearing for November 21, 1983. We anticipated evidence and argument from the Senate Plaintiffs on their objections to the 1983 Senate plan.

On the morning of the hearing, the Senate Plaintiffs filed a stipulation of dismissal signed by all parties who have appeared in the action pursuant to Rule 41(a)(1)(ii), Fed. R.Civ.P. The departure of the Senate Plaintiffs left us without any party present at the hearing who objected to the 1983 Senate plan. We therefore took the State's Motion to adopt the 1983 Senate plan under advisement.

Important to the validity of what we do today is the fact that by orders entered September 21, 1983, and October 24, 1983, we extended to all the parties in this case an opportunity to file objections to the 1983 Senate plan and to participate in a hearing on that plan. See generally Metropolitan Housing Development Corp. v. Village of Arlington Heights, 616 F.2d 1006, 1014 (7th Cir.1980). The Senate Plaintiffs appeared at the hearing and dismissed their action. The MALDEF Intervenors, the only remaining active party other than the State, joined in the State's Motion to adopt the 1983 Senate plan and confined their complaints at the hearing to the 1983 House plan. Since all interested parties,[2] i.e., the State and the MALDEF Intervenors, have resolved all outstanding claims, we review the 1983 Senate plan as a consent decree. See United States v. City of Miami, 664 F.2d 435, 440 (5th Cir.1981) (en banc) (opinion of Rubin, J.) (entry of consent decree necessarily implies that litigants agree to all its significant provisions).

II. STANDARDS GOVERNING APPROVAL OF CONSENT DECREES.

■ Although this case is not a class action governed by Fed.R.Civ.Proc. 23, the consent decree proposed by the State's Motion clearly affects the rights of third parties since it involves the adoption of a reap-

**2.** Neither Strake nor Slagle filed a cross-claim against the State with respect to the LRB Senate plan. Although neither has executed the proposed consent decree, neither filed objections to the entry of that decree. A representative for Slagle did appear briefly at the hearing, but stated that he was present only as "an interested observer." Strake has acknowledged his status as "a nominal party," and has disclaimed any

active role in the litigation. Status Report of George W. Strake, Jr. at 2 (filed May 9, 1983). We note that Strake joined in the Senate Plaintiffs' Motion for Adoption of a Permanent Senate Redistricting Plan, and requested a hearing on such a plan. Nevertheless, Strake did not appear at the hearing and he joined in the stipulation of dismissal of the Senate Plaintiffs' claims.

portionment plan for all the Senate districts in the State. Further, the proposed decree contemplates that it will remain in effect for all state senatorial elections until following publication of the federal decennial census of 1990 or until such earlier date as a valid plan is enacted by the State of Texas and becomes effective. Under these circumstances, this Court is obligated to examine the proposed consent decree carefully to ascertain not only that it is fair, adequate and reasonable as to the parties and affected third parties but also that it does not violate the United States Constitution or any other applicable federal or state law. *See United States v. City of Miami,* 664 F.2d 435, 441 (5th Cir.1981) (en banc) (opinion of Rubin, J.); *United States v. City of Alexandria,* 614 F.2d 1358, 1361 (5th Cir.1970).

At the same time, reviewing a consent decree does not contemplate fully adjudicating the merits. *See Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir.1977). The inquiry does not focus on the precise legal rights of the parties. *United States v. City of Jackson,* 519 F.2d 1147, 1151 (5th Cir.1975); *accord Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 616 F.2d at 1014. Approval requires the decree to represent "a reasonable factual and legal determination based on the facts of the record, whether established by evidence, affidavit or stipulation." *United States v. City of Miami,* 664 F.2d at 441 (opinion of Rubin, J.).

## III. THE ORDER.

With certain modifications hereafter noted, this Court hereby grants the State's Motion, joined in by the MALDEF Intervenors, and is entering simultaneously with the issuance of this opinion an order (the "Order") implementing the provisions of this opinion. The Order makes findings of fact and conclusions of law with respect to the 1983 Senate plan; adopts the 1983 Senate plan as a permanent plan for the apportionment of state senatorial districts until following publication of the federal decennial census of 1990 or until such earlier

date as a valid plan is enacted by the State of Texas and becomes effective; orders that all state senators entitled to a four year term of office by virtue of the drawing of lots on March 17, 1983, shall remain entitled to serve that full term; and retains jurisdiction of this case for the purpose of enforcing the Order and disposing of related matters. The Order is in the form of the consent decree proposed by the State's Motion, with the changes described below:

(1) Paragraphs 27 and 28 of the proposed consent decree contemplated findings by this Court that the modifications to the LRB Senate plan effected in the 1983 Senate plan and the 1983 Senate plan itself comply with the principles applicable to "court ordered plans" and "a permanent court plan," respectively. At the same time, the proposed consent decree chronicles the legislative origins of the 1983 Senate plan, including the modifications to the LRB Senate plan, and finds that the necessity for preclearance of the 1983 Senate plan under Section 5 of the Voting Rights Act stems from those legislative origins. This Court is of the opinion and so finds that for purposes of evaluating the 1983 Senate plan under the United States Constitution and federal law, the 1983 Senate plan, including the modifications to the LRB Senate plan, is a legislative plan, albeit effectuated by court decree, and that it complies in all respects with the principles applicable to legislative plans. *See McDaniel v. Sanchez,* 452 U.S. 130, 152, 101 S.Ct. 2224, 2237, 68 L.Ed.2d 724 (1981); *Wise v. Lipscomb,* 437 U.S. 535, 548–49, 98 S.Ct. 2493, 2501–02, 57 L.Ed.2d 411 (1978) (opinion of Powell, J.). That the State Defendants and the MALDEF Intervenors elected to ask this Court to enter an order adopting the 1983 Senate plan does not alter the fact that the 1983 Senate plan is in all respects the product of the exercise of legislative judgment. Paragraphs 27 and 28 of the proposed consent decree have been modified in the Order to reflect that conclusion.

(2) Paragraph 36 of the proposed consent decree has been modified in the Or-

der to reflect the fact that the 1983 Senate plan has been precleared under Section 5 of the Voting Rights Act.

(3) Paragraphs 1 through 7 of the decretal portion of the proposed consent decree have been modified to eliminate proposed orders with respect to preclearance which are no longer necessary; to delay the effectiveness of the Order until December 31, 1983, in order to give the State Defendants and the MALDEF Intervenors an opportunity to file objections to the changes in the proposed consent decree effected by the Order, thereby assuring that the State Defendants and the MALDEF Intervenors have fully consented to the Order; and to broaden the retention of jurisdiction of this Court so that this Court retains jurisdiction of this case for the purpose of enforcing the Order and disposing of related matters, including attorneys' fees.

## IV. ADDITIONAL FINDINGS WITH RESPECT TO THE ORDER.

■ The Order contains findings of fact and conclusions of law which are self-explanatory and need not separately be addressed herein. As noted in part II of this Memorandum Opinion, however, this Court is required to make certain additional findings by virtue of the fact that the Order is a consent decree affecting the rights of third parties and extending presumably for several years into the future. Before we make those findings, we note two important factors bearing on those findings.

First, the LRB Senate plan was the subject of challenges by the Senate Plaintiffs and the MALDEF Intervenors under the fourteenth and fifteenth amendments to the Constitution of the United States and Section 2 of the Voting Rights Act. This Court held eight days of hearings devoted in significant part to those challenges. Although the issuance by the Department of Justice of a letter of objection precluded us from addressing the validity of those challenges to the LRB Senate plan, our earlier opinion, *Terrazas v. Clements,* 537 F.Supp. 514 (N.D.Tex.), *stay denied,* 456 U.S. 902,

102 S.Ct. 1745, 72 L.Ed.2d 158 (1982), did make detailed fact findings regarding the genesis of the LRB Senate plan which form a basis for our judgment herein. In summary, as a result of the 1982 hearings and the joint stipulations of the parties regarding the 1983 Senate plan, including the modifications to the LRB Senate plan embodied therein, we are thoroughly familiar with all relevant aspects of the 1983 Senate plan, particularly, we note, with its impact on minority groups.

Second, the Department of Justice has precleared the 1983 Senate plan under Section 5 of the Voting Rights Act. This means that the Department of Justice has determined that the 1983 Senate Plan neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group.

Having reviewed the Order in the light of the extensive record in this case and drawing comfort from the conclusions of the Department of Justice under Section 5 of the Voting Rights Act, we find that the Order is fair, adequate and reasonable not only as to State Defendants and the MALDEF Intervenors but also as to third parties who may be affected by it. Further, we find that it does not violate the United States Constitution, the Constitution of the State of Texas or any state or federal statute, including Section 2 of the Voting Rights Act. Our findings with respect to the fairness, adequacy, reasonableness and lawfulness of the 1983 Senate plan are also set forth in the Order.

■ One provision of the proposed consent decree and the Order deserves special mention. Paragraph 4 of the decretal portion of the Order provides that all state senators entitled to a four year term of office by virtue of the drawing of lots on March 17, 1983 shall remain entitled to the full four year term. That portion of the Order is premised on a finding that it would be adverse to the interests of minority voters in the State and adverse to the general public interest to shorten the terms of any senators at this time or to require

any special elections in 1984. At the hearing held on November 21, 1983, the State Defendants and MALDEF Intervenors proffered evidence strongly supporting that finding and the related portion of the Order. We find nothing unfair, inadequate, unreasonable or unlawful under the United States Constitution, *see Mader v. Crowell*, 498 F.Supp. 226, 230–31 (M.D. Tenn.1980), or any other applicable federal law about that finding or the related portion of the Order. The status of the finding and related portion of the Order under Article III, § 3 of the Texas Constitution is somewhat more complex. In *Spears v. Davis*, 398 S.W.2d 921 (Tex.1966), the Texas Supreme Court held that Article III, § 3 shortened the terms of office of senators when the Texas legislature passed a new apportionment act. *Id.* at 928–29. The instant case, however, presents circumstances that are not addressed in *Spears*. The State held its 1982 elections under a temporary court-ordered plan. The 1983 Senate plan, while it is a legislative plan for purposes of evaluating its lawfulness under the United States Constitution and federal law, has not been formally adopted by the Texas legislature and is, instead, being adopted by order of this Court. Further, the 1983 Senate plan makes adaptations to the temporary court ordered plan in part in order to comply with Section 5 of the Voting Rights Act. *Spears* does not address the effect of federal court ordered modifications to a temporary reapportionment plan, that was itself adopted by federal court order, on the terms of senators who drew four year terms following the adoption of the temporary plan. Our research indicates that the Texas courts have never considered the effect of court ordered changes in a temporary court ordered plan made at least in part to comply with federal law. We can, therefore, find no basis for saying that Texas law would preclude the provision of the Order continuing the terms of all senators entitled to a four year term by virtue of the drawing of lots on March 17, 1983, particularly in view of the similarity of the 1983 Senate plan to the LRB Senate plan.

## ORDER

The order attached hereto as Exhibit 1 is hereby adopted as the order of this Court, except that:

I. Paragraphs 27, 28 and 36 of the attached order are hereby amended to read as follows:

27. This Court has reviewed the modifications in Appendix A to this Court's temporary plan and found them to be racially fair and equitable and in compliance in all respects with principles applicable to legislative plans.

28. This Court finds that this Court's temporary plan, as modified by Appendix A, is racially fair and equitable and in full compliance in all respects with principles applicable to legislative plans.

36. This Court finds that this permanent court ordered apportionment plan is subject to preclearance under Section 5 of the Voting Rights Act by virtue of its legislative origin, and that this plan has been so precleared.

II. The decretal portion of the attached order is hereby amended to read as follows:

IT IS THEREFORE ORDERED

1. That Districts 6, 7, 11, 13, 15, 17, 21 and 25 of the temporary court plan for state senatorial districts in Texas adopted by this Court on March 24, 1982 are modified in accordance with the attached Appendix A and that such temporary court plan, as modified, is hereby adopted as the permanent court ordered plan for state senatorial districts in Texas.

2. That this Court's permanent plan shall take effect on December 31, 1983 unless prior to that date the State of Texas Defendants or the MALDEF Intervenors file an objection to the changes in the order attached hereto as Exhibit 1 effectuated by this order. In the event that such an objection is filed, then this plan shall not take effect until this Court rules that such objection has been satisfactorily resolved.

3. That from and after the date on which this permanent court ordered plan takes effect, this plan shall be in force for all state senatorial elections until following publication of the federal decennial census of 1990 or until such earlier date as a valid plan is enacted by the State of Texas and becomes effective.

4. That all state senators entitled to a four year term of office by virtue of the drawing of lots on March 17, 1983 shall remain entitled to serve that full term.

5. That this Court retain jurisdiction of this case for the purpose of enforcing this order and of disposing of related matters, including the entitlement, if any, and the amount of attorneys' fees to be awarded in this matter.

III. The attached order, as amended by this order, (i) is fair, adequate and reasonable not only as to the State of Texas Defendants and the MALDEF Intervenors but also as to third parties who may be affected by it, and (ii) does not violate the Constitution of the United States, the Constitution of the State of Texas or any state or federal statute, including Section 2 of the Voting Rights Act.

### EXHIBIT 1

### ORDER

Before RANDALL, Circuit Judge, SANDERS, District Judge, BUCHMEYER, District Judge.

1. Senate Bill 800 redrawing state senatorial districts in Texas was adopted by the 67th Texas Legislature during the 1981 regular session.

2. Senate Bill 800 was vetoed by the Honorable William P. Clements, Governor of Texas, on June 18, 1981.

3. In view of the veto of Senate Bill 800, the Texas Legislature failed to apportion the State of Texas into senatorial districts at its first regular session following publication of the 1980 United States decennial census.

4. The State Legislative Redistricting Board assembled in the City of Austin on August 30, 1981, within ninety (90) days after final adjournment of the 1981 regular session of the Texas Legislature.

5. On October 27, 1981, within sixty (60) days of their first assembly, the Legislative Redistricting Board apportioned the State of Texas into 31 single-member senatorial districts.

6. The reapportionment plan adopted by the Legislative Redistricting Board resulted in senatorial districts with an overall deviation among districts of 1.82%.

7. The Legislative Redistricting Board apportioned the State on the basis of federal decennial census population.

8. The LRB apportionment plan was submitted by the State of Texas for preclearance pursuant to Section 5 of the Voting Rights Act.

9. The plaintiffs ("Senate Plaintiffs") in CA 3-81-1946-R brought suit in the United States District Court of the Northern District of Texas on October 29, 1981 seeking declaratory and injunctive relief prohibiting implementation of the LRB apportionment plan for state senatorial districts.

10. On January 6, 1982, Jesus Rodriguez and other hispanic citizens (the "MALDEF Intervenors" or "MALDEF") were permitted to intervene and to challenge the LRB senate plan on the grounds that these districts were formed with discriminatory intent or otherwise were violative of the Fourteenth or Fifteenth Amendments to the United States Constitution or were violative of Section 2 of the Voting Rights Act as having a discriminatory impact on hispanic voting strength.

11. The primary defendants in this proceeding are the following state officials (State of Texas Defendants): Governor, Lieutenant Governor, Secretary of State, Attorney General, Speaker of the House of Representatives, Comptroller of Public Accounts, and Commissioner of the General Land Office of the State of Texas.

12. On January 25, 1982, the United States Department of Justice issued a letter of objection to the LRB apportionment plan for the Texas Senate on the basis that

"the state has failed to demonstrate that the plan is [racially and ethnically] nondiscriminatory."

13. The Department of Justice letter of objection rendered the LRB plan unenforceable.

14. In its letter of objection, the Department of Justice identified senatorial districts in Harris County and Bexar County as the specific basis for its objection.

15. The nature of the Department of Justice's objection was further explained to this Court when the Department's representative appeared on March 2, 1982.

16. This Court deferred to the primary jurisdiction of the Department of Justice and declined to rule on the validity of the LRB senatorial plan under Section 5 of the Voting Rights Act.

17. Notwithstanding the Department of Justice objection, this Court adopted the LRB apportionment plan as this Court's temporary plan for use in 1982 elections as the best of the viable alternatives presented and as racially fair and equitable to the people of this State and in compliance in all respects with principles applicable to temporary, court-ordered plans.

18. This Court retained jurisdiction and determined that if a valid plan was not in effect by September 1, 1983, this Court would proceed to draw a permanent court-ordered plan.

19. All primary and general elections for the Texas Senate were conducted in 1982 utilizing the temporary plan as adopted by this Court and a full Senate of 31 members was chosen.

20. On January 11, 1983, the Legislature of the State of Texas convened in regular session.

21. On March 17, 1983, the members of the Texas Senate drew for two and four year terms in conformance with Section 3 of Article III of the Texas Constitution.

22. The MALDEF Intervenors and the State of Texas Defendants through the Attorney General of Texas have agreed upon certain modifications of senatorial districts in Bexar and surrounding counties and Harris and surrounding counties, which appear as Appendix A to this order.

23. The Senate of the State of Texas by resolution adopted on May 16, 1983 states that it has reviewed the modifications in Appendix A and the LRB plan as modified by Appendix A and found the plan and the modifications to embody legitimate state policy such as the consideration of city boundaries, historical district configurations, natural barriers, compactness, communities of interest and member-constituent relations.

24. The MALDEF Intervenors and the State of Texas Defendants agree that the modifications contained in Exhibit A resolve any and all claims by the MALDEF Intervenors regarding the validity of the LRB Senate apportionment, including all claims arising under the Constitution of the United States, the Constitution of the State of Texas or any state or federal statute, including Section 2 of the Voting Rights Act, as amended.

25. The MALDEF Intervenors and the State of Texas Defendants agree that it is their belief that the modifications contained in Exhibit A fully address and solve the stated basis for the Department of Justice objection to the LRB apportionment plan.

26. By agreeing to these modifications of the LRB apportionment plan, the State of Texas Defendants do not concede or admit that the original LRB apportionment is violative of the Constitution of the United States or the Constitution of the State of Texas or any state or federal statute.

27. This Court has reviewed the modifications in Appendix A to this Court's temporary plan and found them to be racially fair and equitable and in compliance in all respects with principles applicable to court ordered plans.

28. This Court finds that this court's temporary plan, as modified by Appendix A, is racially fair and equitable and in full compliance in all respects with principles applicable to a permanent court plan.

29. This Court hereby adopts its temporary court plan, as modified by Appendix A, as its permanent court ordered plan for apportionment of the State of Texas into 31 senatorial districts.

30. This Court has considered whether this modification to its temporary court plan should cause the terms of state senators to be shortened or elections required in 1984 either in all senatorial districts or in all districts modified by Exhibit A.

31. This Court finds that it would be adverse to the interests of minority voters in this State and adverse to the general public interest to shorten the terms of any senators at this time or to require any special elections in 1984.

32. This Court finds that the results of the drawing by members of the Texas Senate for terms on March 17, 1983 should be confirmed and elections should occur in 1984 only in those senatorial districts in which the member drew a term of two years as reflected in the Senate Journal for March 17, 1983.

33. The Senate Plaintiffs and MALDEF claim that the requirement of Section 25 of Article III of the Texas Constitution providing for the division of the State into senatorial districts according to the number of qualified electors rather than population dilutes the voting strength of racial and ethnic minorities and discriminates against racial and ethnic minorities in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution and Section 2 of the Voting Rights Act.

34. In its original answer filed with this Court the State of Texas admitted the unconstitutionality of Section 25 of Article III of the Texas Constitution insofar as it requires the division of the State into senatorial districts according to the number of qualified electors and in support thereof showed that the LRB apportioned the State on the basis of population.

35. This Court finds that the requirement of Section 25, Article III of the Texas Constitution providing for the division of the State into senatorial districts according to the number of qualified electors rather than population dilutes the voting strength of racial and ethnic minorities and discriminates against racial and ethnic minorities in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution and Section 2 of the Voting Rights Act.

36. This Court finds that this permanent court ordered apportionment plan is subject to preclearance under Section 5 of the Voting Rights Act by virtue of its legislative origin.

IT IS THEREFORE ORDERED

1. That the temporary court plan adopted by this Court on March 24, 1982 for state senatorial districts in Texas is modified as set out in Appendix A;

2. That the temporary plan, as modified by Appendix A, is hereby adopted by this Court as its permanent court ordered plan;

3. That this Court's permanent plan shall not take effect unless and until cleared by the Department of Justice pursuant to section 5 of the Voting Rights Act;

4. That the State of Texas is to submit this Court's permanent plan immediately for clearance pursuant to Section 5 of the Voting Rights Act;

5. That upon clearance pursuant to Section 5 of the Voting Rights Act, this permanent court ordered plan shall take effect immediately and shall be in force for all state senatorial elections until following publication of the federal decennial census of 1990 or until such earlier date as a valid plan is enacted by the State of Texas and becomes effective;

6. That all state senators entitled to a four year term of office by virtue of the drawing of lots on March 17, 1983 shall remain entitled to serve that full term;

7. That this Court retain jurisdiction for the purpose of determining the entitlement, if any, and the amount of attorneys fees to be awarded in this matter.